**CLERK'S OFFICE**
**A TRUE COPY**
**May 01, 2023**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* ) <br> ) <br> Cellular phones ("The Devices") recovered following the arrest of Brandon ) <br> M. NICHOLS on April 20, 2023, currently located at Waukesha County ) <br> Drug Task Force, as further described in Attachment A ) | Case No. 23 MJ 61 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 920(o) <br> 21 U.S.C. 841 and 846 | Possession of a machine gun; distribution and possession with intent to distribute controlled substances and conspiracy to do the same. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Hoppe, TFO, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 5/1/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT
Matter Number 2022R355**

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present.  I have been a part of hundreds of state and federal investigations related to drug activity.

3.      I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

4.      I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience.  Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction

1

for narcotics utilizing their cellular phone or a special application downloaded on their phone. I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

5.     I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

6.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. Through my experience and training, I am aware that electronic devices, such as cellphones, can be used to store and save audio, video, and text files that can link to a variety of criminal activity. I am also aware that smart cellphones are capable of capturing location history for the device. On numerous occasions, this

2

electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

8.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

9.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and possession of a machinegun, in violation of Title 18, United States Code Section 922(o); and Title 21, United States Code Sections 841 and 846, have been committed by

3

Azjuan K. MERIWETHER, Brandon M. NICHOLS and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## I.  IDENTIFICATION OF THE DEVICE TO BE EXAMINED

11.  The property to be searched are the cellular phones recovered following the arrest of Brandon M. NICHOLS on April 20, 2023, more fully described as follows (hereinafter referred as "Devices"):

  a.  A gold iPhone 11 XS Max, with a model number of ZOC65, with a cracked screen inside a red and black case; and

  b.  A Blue/Gray iPhone 13 Pro with a model number of ZOE252, inside of a light and dark blue Otter Box style case.

The Devices are currently located at Waukesha County Drug Task Force, Waukesha, Wisconsin. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## II.  PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

12.  Beginning in July 2022, case agents began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin, which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, Brandon M. NICHOLS and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm). Case agents also determined that members of the ADTO use multiple residences and multiple vehicles, including

4

rental vehicles, to store and distribute their narcotics and firearms throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

13.     On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine and cocaine. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS. The CS indicated that MERIWETHER sells guns, including "ghost guns," which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable.  In addition, CS indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon.  This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

14.     CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area.  CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics.  CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop."

15.     CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this

5

investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

16.     Since July 5, 2022, CS and an undercover agent (UC) with ATF engaged in approximately 18 undercover controlled buys with members of the ADTO including MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ ("RICO"), Brandon M. NICHOLS and others. Generally, during the controlled buys of controlled substances and/or firearms the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media. Further firearms were also tested by ATF.

17.     Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20

6

firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO. One of the Glock Auto-sear devices was obtained from Laron N. KING.

18. During the investigation into the ADTO, Brandon M. NICHOLS was identified as a member of the ADTO.

**B. AUGUST 29, 2022, UNDERCOVER TRANSACTION WITH MERIWETHER AND NICHOLS**

19. On August 29, 2022, law enforcement conducted an undercover controlled buy with MERIWETHER. During the undercover controlled buy, CS, and the UC made arrangements to purchase 111.4 grams of fentanyl, one Glock auto rear switch, and a Glock .45 caliber handgun from MERIWETHER using telephone number 414-999-6172. The undercover controlled buy took place at 3716 West North Avenue, Milwaukee, Wisconsin. This location is the address of a barber shop identified "Cuttinup Crew." During the investigation into the ADTO, "Cuttinup Crew" was identified as a location where MERIWETHER is known to frequent. During the transaction, MERIWETHER entered the UC's vehicle, where CS was the front seat passenger. The original transaction was for the Glock auto rear switch, but when MERIWETHER entered the vehicle, he informed the UC that someone was bringing the "switch." During this time, MERIWETHER completed the transaction of fentanyl for $2500 with CS. The UC and MERIWETHER began discussion regarding a handgun that was on MERIWETHER's person. MERIWETHER eventually agreed to sell the handgun, which was identified as a Model 21, Glock .45 Caliber handgun.

7

20.    A short time later a subject, later identified as Brandon M. NICHOLS through social media, arrived at the location.  NICHOLS provided MERIWETHER a bag that contained the "switch" and MERIWETHER subsequently completed the transaction with the UC.  The suspected controlled substance was weighed and tested.  The substance weighed a total weight of 111.4 grams and tested positive for fentanyl.  Law enforcement with ATF later test fired the "switch" provided by NICHOLS and MERIWETHER.  It was determined that the "switch" converted a semi-automatic firearm into a fully automatic firearm, meaning one pull of a firearm trigger caused the firearm to fire multiple bullets.

21.    Following the undercover drug and gun transaction, law enforcement reviewed social media accounts and phone records.  Based on the review of these materials law enforcement located photos of NICHOLS associated with NICHOLS' social media account.  These photos were consistent with the subject that arrived during the undercover transaction and provided MERIWETHER with the switch, which was then provided to the UC.

### C.  ARREST OF MERIWETHER IN INDIANA

22.    On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement.  Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of pound of methamphetamine, and a quarter of pound cocaine.  The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. During a search of MERIWETHER's vehicle, law enforcement located two digital scales with a white powdery residue on them, suspected marijuana, several "small diamonds, and two cell phones (iPhones), one of which was linked to the vehicles GPS system showing the vehicle was enroute to an address

8

in Evansville, Indiana.  MERIWETHER was subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia.  The charges included possession with intent to deliver heroin, possession with intent to deliver methamphetamine, and possession with intent to deliver cocaine.  MERIWETHER remained in custody at Vermillion County Jail in Indiana.

23.     Case agents were monitoring recorded jail calls/texts that MERIWETHER was making from the Vermillion County Jail.  While in custody MERIWETHER continued to communicate with members of the ADTO and engage in drug and firearm trafficking.

## D.  INDICTMENT AND ARREST OF ADTO MEMBERS

24.     On April 11, 2023, a federal grand jury in the Eastern District of Wisconsin returned a thirty-one-count indictment against Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, Brandon M. NICHOLS and other members of the ADTO.  NICHOLS was indicted in one count of possession of a machinegun, in violation of Title 18, United States Code, Section 922(o).  (*United States v. Azjuan MERIWETHER et al*, 23-CR-69).

25.     On April 20, 2023, case agents conducted multiple search warrants and arrested several individuals involved in the MERIWETHER ADTO, including NICHOLS.

26.     On April 20, 2023, at 3348 N. Palmer Street, Milwaukee, Wisconsin case agents took NICHOLS into custody based off an outstanding warrant for his arrest related to the ADTO investigation. NICHOLS subsequently provided case agents permission to search his residence where he was taken into custody.  At NICHOLS's residence law enforcement found two firearms, one was a 9 mm Scorpion that appears to be a short barrel rifle and maybe in in violation of NFA regulation and is being examined by ATF.  During a *Mirandize* interview, NICHOLS admitted to

9

possessing the Scorpion. During the search, two cell phones were located inside the residence by law enforcement. The cellphones belong to NICHOLS and were identified as the following:

a. a gold iPhone 11 XS Max, with a model number of ZOC65, with a cracked screen inside a red and black case; and

b. a Blue/Gray iPhone 13 Pro with a model number of ZOE252, inside of a light and dark blue Otter Box style case.

The Devices are currently located at Waukesha County Drug Task Force, Waukesha, Wisconsin.

27.     On April 21, 2023, case agents were reviewing the jail text messages being sent to and sent by MERIWETHER from the Vermillion County Jail. Case agents observed a message exchange between MERIWETHER and the phone number 414-731-2254. Based on the investigation into the ADTO, case agents believe this number is used by Leonard PINKSTON, another member of the MERIWETHER ADTO. At 2:23 pm there was an "incoming" message, which started the following exchange.

PINKSTON: Bro nigga sayin you the police onna net
MERIWETHER: Smh who
PINKSTON: I just got on niggas ass. Luh joe brown (Case agents are aware that "Luh Joe Brown" is Jacob FLOWERS. During the investigation, case agent obtained court authorized Instagram records from FLOWERS's account which demonstrated his involvement in the sale of firearms and Glock-auto sear devices to the ADTO. FLOWERS was one of the individuals arrested on April 20, 2023.)
MERIWETEHR: Lmao I was on lil dude ass he scary asab
MERIWETHER: Mfk was scared to sell me smacks n shit
PINKSTON: Yk they snatched him up yesterday
MERIWETHER: Probably cause they went through my Instagram how is that my fault same way they got Bam

28.     MERIWETHER clearly references Instagram when discussing "Bam," who case agents know is a nickname for Brandon M NICHOLS, along with discussions on "Luh Joe Brown," Jacob FLOWERS, another individual indicated with NICHOLS.

10

29.     Based on this conversation, case agents re-reviewed Instagram records for MERIWETHER that were obtained via search warrant previously.  Case agents observed a message thread between MERIWETHER who had an Instagram username of "thereal_chefdon92" and NICHOLS who has the username of "hillsidebam."

30.     Case agents reviewed the Instagram (with the username "Bam Nichols" (hillsidebam)) and Facebook (with the username Bam Nichols (Hillside Bam)) accounts belonging to NICHOLS.  The Instsgram account hillsidebam and the Facebook account Hillside Bam both have a photo of Brandon M. NICHOLS publicly viewable.  Based on the statements from the jail call, communication between MERIWETHER's Instragram account and account "hillsidebam" account, and the photos of NICHOLS, case agents believe both accounts do in fact belong to NICHOLS.  The following is a message exchange between MERIWETHER and NICHOLS were conducted via messenger on Instagram.  The times documented in the Instagram records are in UTC and have been adjusted to CST this affidavit.

31.     On August 27, 2022, at 5:23 pm, MERIWETHER's Instagram account "thereal_chefdon92" sent NICHOLS's account "hillsidebam" the message "So bro stil up north he said he should be in town tomorrow or the day after but he fasho want it."  At 7:05 pm, NICHOLS sent "Ok cool."  These messages were two days before the undercover controlled buy the Glock auto-sear device.

32.     The following exchanged occur on August 29, 2022, between MERIWETHER's Instagram account "thereal_chefdon92" and NICHOLS's account "hillsidebam," the same day of the undercover controlled buy:

> 1:29 pm - MERIWETHER: Wya bro
> 1:29 pm -  MERIWETHER: He gone be here at 4
> 1:32 pm – NICHOLS: 414-315-4112 I'll be off at work at 5

11

1:34 pm – MERIWETHER: OK
1:51 pm – MERIWETHER: Imma meet you at the shop I gotta hit the road after
1:52 pm – NICHOLS: Ok
1:52 pm - MERIWETHER: It's the only one left tho right or u git 2
1:54 pm – NICHOLS: 1
2:05 pm – MERIWETHER: Ok
4:55 pm – MERIWETHER: I'm pulling up to the shop bro he finna be there in like 10-15 minutes
5:00 pm – NICHOLS: I just got off I'm on my way!
5:01 pm – MERIWETHER: Bet

33.     Also on August 29, 2022, at 5:22 pm there is an audio call from MERIWETHER 's Instagram account to NICHOLS's Instagram account that lasts less than one minute.

34.     Case agents observed additional messages between MERIWETHER's Instagram account "thereal_chefdon92" and NICHOLS's account "hillsidebam" on August 30, 2022.  At 10:25 am NICHOLS's messaged "Dawg why whiteboy gave me a fake $100 bill nbs. The other 3 good but one was fake."  MERIWETEHR responded "I'm on ass." Then at  10:28 am there was a video chat between MERIWETHER and NICHOLS that last 2 minutes and 45 seconds. At 11:03 am, NICHOLS messaged "He player bro nbs good looking." And at 12:31 pm MERIWETHER messaged "No problem bro."  It should be noted that no fake money was provided by the CS or UC during the undercover controlled buy.

35.     The above Instagram messages between MERIWETHER's account "thereal_chefdon92" and NICHOLS's account "hillsidebam" are consistent with the undercover transcation that took place on August 29, 2022, with the UC, CS, MERIWETHER, and NICHOLS. The messages demonstrate that NICHOLS knew about the transaction on August 27, 2022, and was actively involved in the planning and participation of the transaction that was completed on August 29, 2022.

36. Case agents are aware that this ADTO uses cellular phones and social media, including Instagram, to conduct this illegal ADTO activities including obtaining firearms and obtaining and selling controlled substances. I am also aware individuals can access social media through their cellular phones. Based on this knowledge along with the information outlined previously in this affidavit case agents, it is believed that NICHOLS's Instagram account and the Devices contain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and possession of a machinegun, in violation of Title 18, United States Code Section 922(o); and Title 21, United States Code Sections 841 and 846.

III.   **TECHNICAL TERMS**

37. Based on my training and experience, I use the following technical terms to convey the following meanings:

  a) Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b) Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually

13

be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d) IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera and video recorder, portable media player, internet web browser, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

14

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

40.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b) Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a

15

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. <u>CONCLUSION</u>

43. Based on the above information provided in this affidavit, I believe there is probable cause that the Devices recovered following the arrest of NICHOLS on April 20, 2023, contains evidence the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and possession of a machinegun, in violation of Title 18, United States Code Section 922(o); and Title 21, United States Code Sections 841 and 846 committed by Brandon NICHOLS and other identified and unidentified subjects.

16

17

**ATTACHMENT A**
**Property to Be Searched**

The property to be searched are the cellular phones recovered following the arrest of Brandon M. NICHOLS on April 20, 2023, more fully described as follows (hereinafter referred as "Devices"):

        c. A gold iPhone 11 XS Max, with a model number of ZOC65, with a cracked screen inside a red and black case; and

        d. A Blue/Gray iPhone 13 Pro with a model number of ZOE252, inside of a light and dark blue Otter Box style case.

The Devices are currently located at Waukesha County Drug Task Force, Waukesha, Wisconsin. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

18

**ATTACHMENT B**
**Particular Things to be Seized**

1.      All records and information on the Devices described in Attachment A that relate to a violation of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and possession of a machinegun, in violation of Title 18, United States Code Section 922(o); and Title 21, United States Code Sections 841 and 846, including:

    a.  Preparatory steps taken in furtherance of this crime;

    b.  Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

    c.  All voicemail and call records;

    d.  All text messages and call history;

    e.  Contact list, to include names, addresses, phone numbers, and/or email addresses;

    f.  All social media sites used and applications for social media sites;

    g.  All internet activity;

    h.  All location data including from the phone and/or from any downloaded applications;

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate, including:

    a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Case 2:23-mj-00061-WED    Filed 05/01/23    Page 21 of 26    Document 1

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original   ❏ I

CLERK'S OFFICE
A TRUE COPY
May 01, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Cellular phones ("The Devices") recovered following the arrest )
of Brandon M. NICHOLS on April 20, 2023, currently located )
at Waukesha County Drug Task Force, as further described in )
Attachment A )

Case No.   23   MJ   61

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____5/14/2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____5/1/2023 at 12:43 PM_____

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**
## **Property to Be Searched**

The property to be searched are the cellular phones recovered following the arrest of Brandon M. NICHOLS on April 20, 2023, more fully described as follows (hereinafter referred as "Devices"):

a. A gold iPhone 11 XS Max, with a model number of ZOC65, with a cracked screen inside a red and black case; and

b. A Blue/Gray iPhone 13 Pro with a model number of ZOE252, inside of a light and dark blue Otter Box style case.

The Devices are currently located at Waukesha County Drug Task Force, Waukesha, Wisconsin. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**ATTACHMENT B**
**Particular Things to be Seized**

1.      All records and information on the Devices described in Attachment A that relate to a violation of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and possession of a machinegun, in violation of Title 18, United States Code Section 922(o); and Title 21, United States Code Sections 841 and 846, including:

      a.   Preparatory steps taken in furtherance of this crime;

      b.   Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

      c.   All voicemail and call records;

      d.   All text messages and call history;

      e.   Contact list, to include names, addresses, phone numbers, and/or email addresses;

      f.   All social media sites used and applications for social media sites;

      g.   All internet activity;

      h.   All location data including from the phone and/or from any downloaded applications;

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate, including:

      a.   records of Internet Protocol addresses used;

2

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3